BOOTH, Judge.
This cause is before us on appeal from final judgment of the Circuit Court in a suit for declaratory and injunctive relief. The judgment sought to be reviewed requires the City of Newberry to allow the School Board of Alachua County to connect two public schools, one located inside and one located outside the City limits, to the City’s central sanitary sewer system, without payment of front foot assessments. The basis of the trial court’s decision is Florida Statute section 235.34, (1975) which provides in pertinent part as follows:
“School boards ... of the state are authorized to expend funds ... by contract or agreement ... for the maintenance or improvement of the property of any public school or of any facility on such property. Expenditures may also be made for sanitary improvements . upon or in the vicinity of any existing or proposed public school site Payment by a school board for any improvement set forth in this section shall be authorized in any amounts agreed to by the school board. Any payments so authorized to be made by a school board shall not be mandatory unless the specific improvement and its costs have been agreed to by the school board prior to the improvement’s being made. The provisions of any law, municipal ordinance, or county ordinance to the contrary notwithstanding, the provisions of this section shall regulate the levying of assessments for special benefits on school districts and the directing of the payment thereof. Any municipal ordinance or county ordi-' nance making provision to the contrary is void and shall be of no effect.”
The trial court in the instant case ruled that there was no agreement by the School Board with regard to the specific improvement and its cost, as contemplated by the foregoing statute, and therefore the School Board property could not be subjected to assessment for the improvements. The court further holds that both the elementary school outside the City limits and the high school located within the City limits can connect to the City’s central system without payment of any front foot assessment for the sewer system.[1] We disagree, and reverse.
The purpose of Florida Statute section 235.34 is to prevent the levy of special assessments against school property without agreement of the school board. Obvious dictates of the school board’s budget require, as the legislature has recognized, that local governmental entities planning improvements which will affect the school board’s property consult with, and obtain the approval of the school board as to the proposed improvement and its cost before special assessments can be levied. Hence the language of the above-quoted statute that “the specific improvement and its cost have been agreed to by the school board prior to the improvements being made,” are a condition precedent to the levy of assessments for special benefits on school districts. The legislature, however, did not *89 intend in the enactment of the statute in question to exempt school board property from assessment for the construction of an improvement directly sought by the board, thereby casting an unconscionable additional burden of assessment on other property owners within the City limits.
The facts of this case are that the school board was aware of the proposed improvement and its cost, and actively sought to be included within the service provided. It was for that reason that the City extended lateral lines to provide service to both schools and the school board, for its part, constructed a pump and lift station and connecting line to the perimeter of the elementary school property.
The option was with the school board to be serviced by the central system or not and the choice was made. The school board could have elected to construct a sewage treatment facility at the new elementary school outside the City limits and to continue to operate the already existing independent sewer treatment facility at the high school property but has chosen not to do so.
Planning for the City’s central system began in 1970. Financing of the central sewer system was by grant and loan from the Farmer’s Home Administration. The commitment for funding, obtained on May 30, 1973, specifically provided for assessment charge of $5.00 per front foot, and included the school board property located within the City limits. User charges and special assessments were pledged for repayment of the revenue bond issued to finance the system.
The parties to this suit negotiated with each other for more than two years concerning the sewer service to be provided to the schools. The board contends that the party or parties negotiating on its behalf were without authority to bind it in terms of section 235.34 as to any agreement to pay a front foot assessment. The court below was apparently of the view that the school board had to formally agree to the front foot assessment charge before its property could be assessed for its share of the cost of the improvement. The statute, however, does not require that the school board’s agreement to, and approval of, the specific improvement and its cost be reduced to writing or formalized in any manner. Here the facts of record establish the Board’s agreement within the meaning of the statute and are sufficient to subject the Board’s property to special assessment for the improvement in question.
Accordingly, the judgment below is REVERSED and the cause REMANDED for further proceedings consistent herewith.
SMITH, Acting C. J., and MELVIN, J., concur.

. The order of the Court that the school board pay customary hook-up fee and monthly user charges is uncontested in these proceedings.